[No. 21811. Department Two. December 30, 1929.]

ERICK OLSON et al., Respondents, v. W. F. G. RICE COMPANY, Appellant.[1]

Joseph C. Cheney and Leslie H. Dills, for appellant.
Parker & Parker, for respondents.

MILLARD, J.—This in an action to recover damages alleged to have resulted to the plaintiffs by the refusal of the defendant to accept twenty-nine tons of potatoes in compliance with the terms of the following contract:

"March 10, 1928.

"Anna Zediker and E. Olson confirm the sale of about three cars of potatoes grown to W. F. G. Rice

[1]Reported in 283 Pac. 442.

Co. following terms and conditions as printed or written upon this and the reverse side of this sheet applying. GRADE Washington Combination, $1 more for each five points above and $1 less for each five points below. If Zediker does not desire to sell, Olson delivers one car on this contract. Price $30 or $29 per ton if unscreened, Gromore, per ton f. o. b., refrigerator cars main line rates applying. Time of Delivery soon as sorted. Buyer's option. Seller acknowledges receipt of $50 as part payment on this sale. Remarks: Buyer furnishes sacks at 13c, twine at 60c. Signed Erick Olson, Seller. W. F. G. Rice Co. Buyer.

"It is agreed that if the seller is unable to deliver potatoes described owing to destruction by frost, floods or any act of nature beyond his control, or if buyer shall be unable owing to strikes, embargoes or shortage of refrigerator cars or any cause beyond his control to handle potatoes described, this sale shall be null and void upon written notice being served by either party of his inability to proceed according to terms of this sale and all advances made by buyer are to be refunded immediately by seller.

"Seller agrees that if he fails for any other reason than aforesaid to deliver potatoes described at point or points described, buyer shall have the right at seller's expense to employ labor and material to harvest and deliver said potatoes f. o. b. cars and to deduct cost of this service from the purchase price at time of settlement.

"Seller agrees that, in event he fails to furnish potatoes according to grade specified, buyer shall have option of rejecting or resorting at seller's expense.

"Seller warrants his title to said potatoes and guarantees they are not subject to lien, chattel mortgage, or any incumbrance of any nature, except—

"Seller hereby gives the buyer a lien upon the all above mentioned crops for any and all advances made by him with all the rights of a chattel mortgage."

A trial to the court without a jury resulted in findings and judgment in favor of the plaintiffs for $522 damages. From this judgment, the defendant has appealed.

Under the contract, which was confirmed by Mrs. Zediker, the respondents agreed to sell to appellant three carloads of potatoes, or a total of fifty-four tons. Respondents delivered twenty-five tons for which they received twenty-four dollars a ton, the inspection disclosing that the potatoes were below grade. Olson testified:

"Q. Were any potatoes delivered under that contract? A. We delivered about twenty-five tons,— Q. Were they loaded and delivered in one parcel or in different cars? A. In three different parcels. I put forty-five sacks in Chris Webber's car to fill a car he had sold to Thompson or Rice; and I put eighty-five sacks in another car—no, I put forty-five sacks in Barr's car, and the eighty-five sacks into Webber's car; and then I loaded out a straight car with eighteen tons in my own name, that is in my own car. . . . and they were inspected, and paid for to me by Mr. Thompson and the state inspector. Q. By whom were the potatoes in controversy here owned? To whom did they belong? A. They belonged to me and Dr. Zediker. They were grown on the place and were hauled and shipped together. Q. I notice in the contract Anna Zediker and Erick Olson covered the sale of three carloads of potatoes to W. F. G. Rice Company, the Washington combination one dollar more for each five points above, and one dollar less for each five points below, and that if Mrs. Zediker did not desire to sell Olson would deliver one car on the contract. . . . A. The reason for that was that when Thompson came out on Saturday to buy these potatoes he offered a price of thirty dollars a ton, and Dr. Zediker had said all the time when they got thirty we would sell. But I hadn't seen her that day, and I didn't want to bind myself definitely, so I told Mr. Thompson we would sell on these conditions and see Dr. Zediker, and if she objected one carload will go as my potatoes, and if she consented he will take them all, and he said all right. Q. Relate what took place between you and Mrs. Zediker when you saw her after the paper was made? A. She told me to go ahead and let him have the potatoes.

. . . Q. Did Mr. Thompson examine any of the potatoes which you delivered? A. Yes, he examined all of them. Q. When was that examination made if you recall? A. The last examination was on the last carload I delivered. After Mr. Thompson came out to pay for them and I told him the inspection certificate on it only showed forty-five per cent number ones Mr. Thompson was really disappointed with the grade, and of course I was, too, because that meant I lost six dollars a ton from the thirty dollars which I had sold for. Then Mr. Thompson said, 'Let's look at those spuds,' and we dumped five or six sacks on the floor. Mr. Thompson said he didn't see why that should be, why I should have that, that these potatoes looked better than the others. Q. He said he didn't think you got a fair grade on them? A. No. Q. *Were the remainder of the potatoes you had substantially of the same quality?* A. *The remaining were substantially smaller, and would run better grade.* I asked the inspector to look at them and he looked at them— Q. Did you have enough potatoes at Gromore to have supplied the entire three carloads you agreed to sell? A. I think so. We hauled more than two carloads to Perry's Cold Storage afterwards.''

On April 23, 1928, the appellant refused to accept the remainder of the potatoes, twenty-nine tons, due under the terms of the contract. The court found:

''That the market value of potatoes of the kind and quality specified in said contract at Gromore, Washington, on the said 23rd day of April, 1928, was $12 per ton, . . .''
and computed respondents' damages at eighteen dollars per ton, the difference between the contract price of thirty dollars and the market value of twelve dollars on April 23, 1928.

Clearly, there was a breach of the contract by the appellant. Respondents' measure of damages is the difference between the contract price and the market value of the potatoes at the time of the breach

of the contract. What was the contract price of the potatoes? The contract recites:

"GRADE Washington Combination, $1 more for each five points above and $1 less for each five points below. . . . Price $30 or $29 per ton if unscreened, Gromore, per ton, f. o. b., refrigerator cars main line rates applying. . . . Seller agrees that in event he fails to furnish potatoes according to grade specified buyer shall have option of rejecting or resorting at seller's expense."

Under these terms, the respondents delivered twenty-five tons, for which they received twenty-four dollars a ton. Were the remaining twenty-nine tons to be screened and valued at thirty dollars a ton, or unscreened and to bring twenty-nine dollars a ton? Would the remainder of the potatoes to be delivered grade the same or higher or lower than the twenty-five tons accepted by appellant?

Under the contract, the price ranged from twenty-four dollars to thirty dollars a ton. When questioned whether the remainder of the potatoes to be delivered would grade the same or higher or lower than the twenty-five tons accepted by appellant, at the price of twenty-four dollars a ton, respondent Olson testified: "The remaining were substantially smaller, and would run better grade." That testimony was not contradicted, and it was some proof as to the damages sustained from the breach of contract. It was proof that the potatoes were worth not less than twenty-four dollars a ton, hence the respondents' recovery should have been limited to the difference between twenty-four dollars a ton, which was one of the prices under the terms of the contract, and the market value of the potatoes at the time of the breach of the contract.

The cause is remanded with instructions to enter judgment accordingly.

PARKER, FRENCH, HOLCOMB, and MAIN, JJ., concur.